Matthew R. Richard (SBN 340084)
Michael S. Wilcox (SBN 215269)
**GAVRILOV & BROOKS**
2315 Capitol Avenue
Sacramento, CA 95816
Telephone: (916) 504-0529
Facsimile: (916) 727-6877
Email: Mrichard@gavrilovlaw.com
Email: mwilcox@gavrilovlaw.com

Attorneys for Plaintiff
AUCTIONZ, LLC D/B/A WHOLESALEZ, a Florida
limited liability company, individually and on behalf of
all others similarly situated,

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUCTIONZ, LLC D/B/A WHOLESALEZ, a Florida limited liability company, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>LIQUIDITY SERVICES INC., a Delaware corporation, and HOTELEMENTS INC., a California corporation<br><br>    Defendants, | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Gavrilov & Brooks
2315 Capitol Avenue
Sacramento, CA 95816

# CLASS ACTION COMPLAINT

Plaintiff, Auctionz, LLC d/b/a Wholesalez ("Wholesalez"), hereby sues Defendants, Liquidity Services Inc. ("Liquidity") and Hotelements Inc. ("Hotelements"), and alleges as follows:

## PARTIES

1.     Plaintiff Auctionz, LLC d/b/a Wholesalez is a Florida limited liability company with its principal place of business in Florida.

2.     Defendant Liquidity Services Inc. is a Delaware corporation with its principal place of business in Maryland.

3.     Defendant Hotelements, Inc. is a California corporation with its principal place of business in California.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.     This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Lanham Act, 15 U.S.C. § 1125 ("Lanham Act"). The Court has supplemental jurisdiction over the state law claims because they arise from the same conduct and subject matter giving rise to the Lanham Act claim.

6.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this claim occurred in this District, specifically, without limitation, the fraudulent communications and demands made by an agent of Liquidity Services, Inc. (collectively, "Liquidity") while located in California, followed by wire transfers received by Hotelements, Inc. ("Hotelements") in California.

Gavrilov & Brooks
2315 Capitol Avenue
Sacramento, CA 95816

Gavrilov & Brooks
2315 Capitol Avenue
Sacramento, CA 95816

## STATEMENT OF FACTS
### Liquidity's Control of the Marketplace

7.     Liquidity is the **only** publicly traded company that operates in the reverse supply chain market, whereby Liquidity's primary business model is to provide online marketplaces for returned customer goods, excess inventory, and salvaged goods.

8.     The reverse supply chain market, that Liquidity unquestionably dominates and controls, is the business of processing goods that are returned by consumers for various reasons, including damages, defects, and recalls. Liquidity then operates numerous marketplaces and platforms to auction, recycle, or resell such goods.

9.     Liquidity works with both private and public entities, including without limitation, Fortune 100 companies like Amazon, federal and state governmental agencies, and private business-to-consumer companies like Wholesalez and other retailers, wholesalers, and resellers.

10.     Liquidity sells such goods to businesses and direct to consumers.

11.     By its own admission, Liquidity states as follows[1]:

Liquidity Services (NASDAQ: LQDT) operates the world's largest B2B e-commerce marketplace platform for surplus assets with over $10 billion in completed transactions to more than five million qualified buyers and 15,000 corporate and government sellers worldwide. The company supports its clients' sustainability efforts by helping them extend the life of assets, prevent unnecessary waste and carbon emissions, and reduce the number of products headed to landfills.

12.     Liquidity's success in monopolizing this marketplace is primarily attributed to being a supermajority holder of liquidation contracts from its Fortune 100 company partners. Liquidity obtains such returned customer goods, excess inventory, and salvaged goods from its Fortune 100 company partners and then resells such goods to Wholesalez and others throughout the United States.

---

[1] https://liquidityservices.com/press-releases/liquidity-services-announces-fourth-quarter-fiscal-year-2024

13.     Essentially, Liquidity accepts and processes goods that are rejected by both consumers and governments, then causes it to be resold back to the public, either directly or indirectly.

### Dependence on Liquidity's Marketplace Control

14.     Due to Liquidity's power in the marketplace, businesses and consumers across the country wholly rely and depend on the goods that are controlled and processed by Liquidity, especially in the e-commerce industry.

15.     Like many others, Wholesalez is engaged in the business of purchasing and reselling consumer goods, including returned customer goods, excess inventory, and salvaged goods.

16.     Wholesalez also sells such goods to businesses and direct to consumers. Accordingly, Wholesalez has a dual relationship with Liquidity – it is both a customer of Liquidity and a competitor of Liquidity. Both Liquidity and Wholesalez sell goods in the e-commerce market.

17.     Liquidity promises its purchasers, like Wholesalez, significant profit margins that are unmatched by any other supplier in the industry. Such profit margins are unique to the reverse supply chain market and induce thousands of companies to purchase from Liquidity. Such profit margins are the <u>only</u> means in which wholesalers and resellers can feasibly participate and compete in the industry when reselling such goods to the general public and consumers.

### Dealings With Liquidity's Agents

18.     In or about early 2024, Wholesalez sought to purchase goods from Liquidity, with each truckload purportedly containing approximately $400,000.00 in retail value, for a total manifest value exceeding $10,000,000.00.

19.     The goods were to be delivered to Wholesalez or its affiliates in Florida and Georgia.

Gavrilov & Brooks
2315 Capitol Avenue
Sacramento, CA 95816

CLASS ACTION COMPLAINT

20. Each purchase order placed by Wholesalez was processed and approved by Liquidity's employees and/or sales agents located in California (collectively, "Liquidity's Agent").

21. Each purchase order from Wholesalez was memorialized by an invoice issued by Liquidity (collectively, the "Invoices").

22. To Wholesalez's surprise, the price indicated on the Invoices was not the final price to receive the goods thought to be purchased by Wholesalez.

23. In fact, Liquidity's Agent, via interstate electronic communications, demanded a $500.00 per the last 25 truckloads to be personally paid directly to it and/or its accomplices *before* any future purchase orders were to be approved and the trucks authorized to ship the already ordered goods.

24. Upon information and belief, Liquidity's Agent regularly demands excess amounts to be paid separately by purchasers before authorizing their purchase orders and fraudulently issues Invoices reflecting the incorrect price of such goods ("Excess Payments"), intentionally omitting the Excess Payment amounts required to be tendered by the purchaser before Liquidity ships the purchased – or at least, thought-to-be purchased – goods.

25. Liquidity failed to implement adequate background checks, training, compliance monitoring, and supervision to prevent or detect such wrongful conduct, despite the foreseeable risk that employees in sales roles could exploit their positions for personal gain.

26. It is clear by Liquidity's own internal pay structure that it is complicit in the kickback scheme. By way of example, Liquidity sales agents conservatively control more than $1B in MSRP a year, likely resulting in more than $100M in sales. These sales agents serve merely as entry-level employees whose base salaries do not exceed 0.0001 - 0.0002% of the MSRP or 0.001 - 0.002% of the sales that they, either independently or with inadequate supervision, process, approve, and control. Organizational structures

Gavrilov & Brooks
2315 Capitol Avenue
Sacramento, CA 95816

CLASS ACTION COMPLAINT

such as these, which are intentionally and meticulously designed to maximize profit for Liquidity, are prime breeding grounds for unethical dealings.

27.    In addition to the many instances of clear and willful disregard for ethical business practices to Wholesalez, and others similarly situated, the Liquidity Agent also brazenly *bragged* about how the company regularly diverts goods from contracts held by their publicly traded company, to other outside, privately-held companies in order to subjugate profits from its shareholders.

28.    Hotelements was designated as the payment recipient for the Excess Payments by the Liquidity Agent.

29.    Upon information and belief, the Liquidity Agent and Hotelements have had prior similar dealings, which still continue to this day.

30.    Due to the Liquidity Agent being in possession of Hotelements' private financial information, including its business wire instructions, banking information, and account information, the Liquidity Agent reasonably appeared to have authority to act on behalf of Hotelements as their agent as well.

31.    In several phone conversations with Wholesalez, the Liquidity Agent represented and acted on behalf of Hotelements as its agent.

32.    Wholesalez, and other similarly situated, have reasonably relied on the Liquidity's Agent's representations made on behalf of Hotelements, to their detriment.

33.    Wholesalez, acting under economic duress due to Liquidity's control of the marketplace and inability to obtain substantially similar goods of similar profit margins in similar quantities, threat of negative consequences from Liquidity's Agent, and the fraudulent inducement and coercion of Liquidity's Agent, Wholesalez involuntarily tendered such Excess Payments via wire transfer at the instruction of Liquidity's Agent.

34.    Upon later inquiry, Hotelements appears to not be affiliated with Liquidity and not involved in the shipping of goods or otherwise related to the purchase orders and/or Invoices.

CLASS ACTION COMPLAINT

35.    Accordingly, Hotelements unjustly received and still retains the Excess Payments tendered by Wholesalez and likely other entities and persons similarly situated to Wholesalez.

### Liquidity's Knowledge of Agent's Fraudulent Scheme

36.    Upon information or belief, Liquidity knew of, should have known with reasonable due diligence, and/or ratified its agent's conduct in demanding personal kickback payments as a condition to finalize sales transactions.

37.    Upon information and belief, Liquidity's Agent has been employed and/or has served as a sales agent for Liquidity for many years, has been _**promoted**_ over the course of its employment and/or agency, and _**supervises**_ other employees and/or agents. Accordingly, it is more likely than not that this fraudulent scheme not only affects potentially thousands of third parties who are similarly situated to Wholesalez through this single agent, but also likely permeates through to other employees and/or agents acting on behalf of Liquidity in an environment that is unchecked, unsupervised, and unrestricted, thereby promoting the likelihood of unethical dealings, kickbacks, excess payment demands, and coercive sales tactics – to wit, Liquidity expressly advertises the opposite to the detriment of any unsuspecting purchaser who relies on such affirmative statements.

38.    Liquidity admits on its own website that the industry is wrought with unethical dealings and purports to have "integrity" in its transactions, when in fact Liquidity supports and/or inexplicably fails to prevent Liquidity's own sales agents and/or employees from demanding, procuring, and, ultimately, receiving huge financial benefits from such unethical dealings.

39.    Accordingly, Liquidity cannot in good faith claim ignorance of unethical dealings, its website includes the following provisions under "Ethical Dealings" section of Liquidity's advertised and published Code of Conduct:[2]

---

[2] https://liquidityservices.com/supplier-code-of-conduct

CLASS ACTION COMPLAINT

**Ethical Dealings**                                                    ✕

Honest dealing with customers and suppliers is essential to sound business relationships. Liquidity Services seeks to give all potential suppliers fair consideration. Decisions are based on objective criteria such as price, quality, and service capability as well as a Supplier's reliability and integrity. Giving or receiving any kickbacks, bribes, or similar payments of any sort is prohibited. Suppliers are required to demonstrate these same high ethical standards and to conduct all business transactions with integrity and fairness. Suppliers may not act in any way, in their business relationship with Liquidity Services or otherwise, that violates the U.S. Foreign Corrupt Practices Act, the U.K. Bribery Act, or any other antibribery law around the world. Suppliers must only use suppliers that do not violate ethical standards through bribes, kickbacks, or other similar improper or unlawful payments. Giving or promising to give anything of value to induce an official to affect any governmental act or decision, or to assist the company in obtaining or retaining business or securing any improper advantage, is strictly prohibited. If any Liquidity Services employee, or any other person, requests such a payment, Suppliers are required to report such a request to the Liquidity Services Compliance and Ethics Hotline.



# Compliance and Ethics Hotline

Suppliers and their employees are encouraged to use the Liquidity Services Compliance and Ethics Hotline to report wrongdoing. This Hotline is not intended to circumvent the Suppliers' own internal reporting mechanisms, but rather to supplement them. Suppliers and their employees may also contact the Liquidity Services Compliance Department directly with any questions or reports. The Compliance Department may be reached by email at legal@liquidityservices.com.

40.    As provided above, "Giving or receiving any kickbacks, bribes, or similar payments of any sort is prohibited . . . Suppliers must only use suppliers that do not violate ethical standards through **bribes**, **kickbacks**, or other similar improper or unlawful payments" (emphasis added).[3]

41.    Further, the Code of Conduct contains the following section:

Gavrilov & Brooks
2315 Capitol Avenue
Sacramento, CA 95816

---

[3] https://liquidityservices.com/supplier-code-of-conduct

8

Gavrilov & Brooks
2315 Capitol Avenue
Sacramento, CA 95816



42.    In this section, it contains, in pertinent part, the following:

**IMPROPER PAYMENTS AND BRIBES**

It is against Liquidity Services' policy to make unlawful, improper, or other kinds of questionable payments to anyone, including customers, government employees or officials, the business partners. We do business and sell our products on the merits of price, quality, and service only.

We will not offer or accept expensive gifts, bribes, or any other kind of payment or benefit to or from representatives of customers, suppliers, sellers, buyers, competitors, government, or governmental agencies. This applies to any individual or organization at any level, in every office.

43.    The above information raises the question: If Liquidity was not aware of the improper conduct of its employees and/or agents, why does its website focus so heavily on this issue?

44.    As evidenced by the above, Liquidity has knowledge of unlawful and improper conduct by its agents, including bribery and kickback schemes.

CLASS ACTION COMPLAINT

45.    Rather than implementing safeguards, such as segregation of duties to prevent sole employee control over sales transactions or requiring multi-level approvals, Liquidity seeks to shift responsibility for unethical conduct via boilerplate website disclaimers that create the false impression of an ethically responsible company that operates with integrity which induces unsuspecting purchasers and third parties to do business with Liquidity to their own detriment.

### Liquidity's Inflation and Falsification of Manifests and Invoices

46.    In addition, Liquidity and/or its agents inflate the value of the goods it sells to third parties on its manifests and invoices to artificially increase the cost of shipments to its purchasers, like Wholesalez and others similarly situated.

47.    The supplier sells a truckload of goods to Liquidity, representing a certain retail value for the truckload, and charges Liquidity a percentage of that retail price.

48.    Thereafter, upon receiving the truckload of goods and the corresponding manifest, Liquidity either (i) inflates the retail values of the units on the manifest to artificially raise the total retail value and the cost to its third-party purchasers, or (ii) adds retail units to the manifest that it knows are not included in the truckload to achieve the same result.

49.    Then, when a third-party purchaser places an order with Liquidity, the resultant invoice reflects a false "Retail Price", suggesting the third-party purchaser can realize profit margins that are unmatched in the e-commerce industry.

50.    This systematic manipulation of manifests and invoices through false and misleading representations of values, descriptions, and goods has caused Wholesalez and others similarly situated to pay unfair and excessively high prices because there are no competitors to offer alternatives in the market.

51.    Liquidity's exclusive contracts with Fortune 100 companies and government agencies, have empowered Liquidity and its employees and/or agents to resort to such unfair, deceptive, and exploitive conduct when dealing with its third-party purchasers.

CLASS ACTION COMPLAINT

Gavrilov & Brooks
2315 Capitol Avenue
Sacramento, CA 95816

52.    As a result of the foregoing, Wholesalez has suffered significant financial losses, including a revenue decrease in the millions of dollars and inability to obtain substantially similar goods from other suppliers in equal volumes, all proximately caused by and attributable to Liquidity's schemes, misrepresentations, and singular control of the market.

53.    Companies like Liquidity, which dominate their industry, exploit that dominance to silence the very businesses they harm. They rely on the unspoken threat that whistleblowers like Wholesalez will be cut off from critical supply chains—sending a clear message: speak up, and you'll be shut out. This fear allows Liquidity to operate with open, unapologetic disregard for both the companies they damage and the shareholders to whom they owe a fiduciary duty. Their conduct is not accidental—it is calculated. And they will not stop unless they are confronted and held fully accountable.

## CLASS ALLEGATIONS
### (Against Liquidity)

54.    Plaintiff brings this action pursuant to Rule 23(b)(2) and (b)(3), and seek certification of the following classes against Liquidity ("Classes"):

a. **Excess Payment Class**: All persons in the United States who from four years prior to the filing of this action through class certification (i) have purchased goods from Liquidity, (ii) received a demand to tender and/or tendered an Excess Payment to Liquidity or a third party at the instruction of Liquidity and/or its agents, (iii) when such Excess Payment was not reflected on an invoice and/or on the condition that their purchase would not be approved without such payment of such Excess Payment.

b. **False Advertising Class**: All persons in the United States who from four years prior to the filing of this action through class certification (i) have purchased goods from Liquidity, (ii) the actual goods received differed from the descriptions on the manifests, purchase orders, and/or invoices, (iii) in a manner that is substantially similar to Wholesalez.

Gavrilov & Brooks
2315 Capitol Avenue
Sacramento, CA 95816

c. **California False Advertising Law Class**: All persons in California who, from four years prior to the filing of this action through class certification, (i) purchased goods from Liquidity; (ii) received goods that materially differed from those described in Liquidity's advertising, manifests, invoices, or promotional representations; or (iii) were misled by Liquidity's failure to disclose required Excess Payments or its misrepresentations about its business practices and product integrity.

55.    The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors, or assigns of any such excluded persons; and (6) persons whose claims against the Defendants have been fully and finally adjudicated and/or released.

56.    Plaintiff anticipates the need to amend the number, type, and definitions of the proposed Classes following appropriate discovery, and hereby reserves the right to do the same.

57.    **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and the Plaintiff is a member of the Classes.

58.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

Gavrilov & Brooks
2315 Capitol Avenue
Sacramento, CA 95816

a.  Whether Liquidity issued false or misleading manifests to Plaintiff and members of the False Advertising Class;

b.  Whether Liquidity issued false or misleading invoices to Plaintiff and members of the False Advertising Class;

c.  Whether Liquidity knew or should have known through due diligence that its agents were demanding and/or ultimately causing Excess Payments from Plaintiff and members of the Excess Payment Class;

d.  Whether Liquidity required Excess Payments to be made to Liquidity and/or third parties, like Hotelements, prior to approving purchase orders and/or shipments of purchased goods to Plaintiff and members of the Excess Payment Class;

e.  Whether Liquidity required Excess Payments to be made to Liquidity and/or third parties, like Hotelements, and failed to reflect such cost on Liquidity's invoices to Plaintiff and members of the Excess Payment Class;

f.  Whether Liquidity issued false or misleading invoices to Plaintiff and members of the Excess Payment Class due to the intentional omission of the Excess Payment required by Liquidity;

g.  Whether the false or misleading manifests constitute a violation of 15 U.S.C. § 1125;

h.  Whether the false or misleading invoices constitute a violation of 15 U.S.C. § 1125;

i.  Whether the Excess Payments constitute a violation of 15 U.S.C. § 1125;

j.  Whether Liquidity made or disseminated advertisements, invoices, manifests, or other representations in California that were false, misleading, or deceptive within the meaning of California Business & Professions Code § 17500;

k.  Whether Liquidity omitted material facts in connection with the marketing or sale of goods to members of the California False Advertising Law ("FAL")

CLASS ACTION COMPLAINT

Gavrilov & Brooks
2315 Capitol Avenue
Sacramento, CA 95816

Class, including the requirement of Excess Payments and the true value of goods sold;

l.  Whether members of the California FAL Class were likely to be misled by Liquidity's advertising and invoicing practices;

m. Whether Liquidity's conduct constitutes a violation of California's False Advertising Law;

n.  Whether members of the California FAL Class are entitled to restitution, injunctive relief, and attorneys' fees under California law; and,

o.  Whether the members of the Classes are entitled to treble, statutory, and/or punitive damages based on the willfulness of the Defendant's conduct.

59.   **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced to handle class actions. Plaintiff has no interest antagonistic to those of the Classes, and the Defendant has no defenses unique to Plaintiff. Plaintiff and its counsels are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither the Plaintiff nor its counsels have any interests adverse to the Classes.

60.   **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from

Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## COUNT I
### Lanham Act Violation – False Advertising Under 15 U.S.C. § 1125(a)(1)(B) (Liquidity)
### (On Behalf of Plaintiff and The False Advertising Class)

61.    The allegations of paragraphs 1 through 60 are realleged as if fully set forth herein.

62.    The Lanham Act prohibits false or misleading representations in connection with commercial goods or services that deceive or are likely to deceive others about the nature, characteristics, or qualities of goods or services. See 15 U.S.C. § 1125(a)(1)(B).

63.    Liquidity, by and through its agents, made the following misrepresentations to Wholesalez and others similarly situated:

   a.  Inflated, modified, and/or falsified manifests for shipments of goods;

   b.  False or misleading descriptions of such goods, including without limitation, their nature, characteristics, condition, qualities, values, and quantities;

   c.  Inflated, inaccurate, and/or overstated retail value of such goods;

   d.  False, misleading, and/or inaccurate Invoice price totals, not reflecting the final price of such goods; and,

   e.  False or misleading express representations of Liquidity's ethical dealings and commitment to integrity in the context of its transactions with third parties.

64.    The foregoing misrepresentations were made in commerce and in connection with the promotion and sale of goods.

65.    The foregoing misrepresentations were made to induce Wholesalez and others to purchase goods from Liquidity.

66.    The foregoing misrepresentations actually deceived or have the tendency to deceive a substantial portion of the targeted audience.

Gavrilov & Brooks
2315 Capitol Avenue
Sacramento, CA 95816

67.    Such misrepresentations and deceptions are material in nature and are likely to influence buying decisions.

68.    Liquidity caused such misrepresentations and false advertisements to enter interstate, foreign, and/or Indian commerce.

69.    The misrepresentations materially influenced Wholesalez's decision to transact and caused direct competitive injury, including economic harm, diversion of business resources, and reputational damage.

70.    As a direct result of the false and misleading representations in violation of the Lanham Act, Wholesalez suffered concrete and measurable injuries, including financial losses, loss of business goodwill, reputational harm, and lost future business opportunities.

WHEREFORE, Plaintiff, individually and on behalf of others similarly situated, demands judgment against Liquidity Services Inc., based on the foregoing, for all actual damages, consequential damages, statutory damages, prejudgment interest, post judgment interest, attorneys fees and costs, injunctive relief, and all other applicable damages and relief allowable in law and in equity, which may include punitive damages.

## COUNT II
### Lanham Act Violation – False Affiliation and Advertising Under 15 U.S.C. § 1125(a)(1)(A) and (B)
### (Liquidity)
### (On Behalf of Plaintiff and The Excess Payment Class)

71.    The allegations of paragraphs 1 through 60 are realleged as if fully set forth herein.

72.    The Lanham Act prohibits false or misleading representations that are likely to cause confusion, cause mistake, or deceive as to the affiliation, connection, or association of such person with another person, or as to the sponsorship or approval of goods, services, or commercial activities by another person. See 15 U.S.C. § 1125(a)(1)(A).

73.    The Lanham Act prohibits false or misleading representations in connection with commercial goods or services that deceive or are likely to deceive others about the nature, characteristics, or qualities of goods or services. See 15 U.S.C. § 1125(a)(1)(B).

74.    Liquidity, by and through its agents, made the following misrepresentations to Wholesalez and others similarly situated:

      a.  False or misleading representations of affiliation, connection, or association by and between Liquidity and third parties like Hotelements; and,

      b.  False, misleading, and/or inaccurate Invoice price totals, not reflecting the final price of such goods.

75.    The foregoing misrepresentations were made in commerce and in connection with the promotion and sale of goods.

76.    The foregoing misrepresentations were made to induce Wholesalez and others to purchase goods from Liquidity.

77.    The foregoing misrepresentations actually deceived or have the tendency to deceive a substantial portion of the targeted audience.

78.    Such misrepresentations and deceptions are material in nature and are likely to influence buying decisions.

79.    Liquidity caused such misrepresentations and false advertisements to enter interstate, foreign, and/or Indian commerce.

80.    The misrepresentations materially influenced Wholesalez's decision to transact and caused direct competitive injury, including economic harm, diversion of business resources, and reputational damage.

81.    As a direct result of the false and misleading representations in violation of the Lanham Act, Wholesalez suffered concrete and measurable injuries, including financial losses, loss of business goodwill, reputational harm, and lost future business opportunities.

CLASS ACTION COMPLAINT

Gavrilov & Brooks
2315 Capitol Avenue
Sacramento, CA 95816

WHEREFORE, Plaintiff, individually and on behalf of others similarly situated, demands judgment against Liquidity Services Inc., based on the foregoing, for all actual damages, consequential damages, statutory damages, prejudgment interest, post judgment interest, attorneys fees and costs, injunctive relief, and all other applicable damages and relief allowable in law and in equity, which may include punitive damages.

## COUNT III
**Violation of California's False Advertising Law (FAL)**
**Under California Business & Professions Code § 17500 et seq.**
**(Liquidity)**
**(On Behalf of Plaintiff and the California FAL Class)**

82.    Plaintiff incorporates by reference the allegations of Paragraphs 1 through 60, 63, and 74 as if fully set forth herein.

83.    Liquidity and its agents made or disseminated false and misleading statements in connection with the sale and advertisement of goods in California.

84.    Liquidity and its agents inflated or fabricated manifests misrepresenting the nature, quantity, and value of goods.

85.    Liquidity and its agents created misleading invoices failing to reflect the actual prices paid, including omission of Excess Payments.

86.    Liquidity and its agents made representations regarding ethical dealings and corporate integrity that were knowingly false or misleading.

87.    Liquidity and its agents made material omissions regarding necessary payments outside invoiced amounts and the true value of goods sold.

88.    These representations and omissions were made with the intent to induce members of the public, including Plaintiff, to purchase goods and send additional payments, and were likely to deceive a reasonable consumer.

89.    Liquidity's conduct constitutes false advertising within the meaning of Business & Professions Code § 17500.

CLASS ACTION COMPLAINT

Gavrilov & Brooks
2315 Capitol Avenue
Sacramento, CA 95816

90.    As a direct and proximate result, Plaintiff and members of the California FAL Class suffered harm, including economic loss, unjust enrichment to Liquidity, and the purchase of misrepresented goods.

WHEREFORE, Plaintiff, individually and on behalf of others similarly situated, demands judgment against Liquidity Services Inc. for restitution, injunctive relief, attorneys' fees under California Code of Civil Procedure § 1021.5, and all other relief available under California law.

## COUNT IV
### Violation of California's Unfair Competition Law
### Under Business and Professional Code § 17200 et seq.
### (Liquidity)

91.    The allegations of paragraphs 1 through 60, 63, and 74 are realleged as if fully set forth herein.

92.    Liquidity and its agents engaged in unlawful, unfair, and fraudulent business acts by demanding kickbacks and Excess Payments, making false representations about manifests, and artificially inflating values while intentionally misstating prices.

93.    Liquidity is vicariously liable for its agent's conduct under the doctrine of respondeat superior.

94.    The demand for kickbacks and Excess Payments constitutes unlawful, unfair, and fraudulent business practices in violation of California's Unfair Competition Law and constitutes commercial bribery, among other criminal acts, under California Penal Code § 641.3.

95.    Furthermore, Liquidity and/or its agents induced Wholesalez to purchase goods by fraudulently misrepresenting their retail value and final order prices.

96.    The systematic alteration of manifests to inflate order values and/or mislead buyers as to the contents of such orders is a deceptive trade practice that harmed Wholesalez and undermined marketplace integrity.

97.    These acts formed part of a broader industry-known scheme to defraud vendors through manifest manipulation and false invoicing, both of which are deliberate and recurring practices by Liquidity and its agents.

98.    As a direct result of the unfair competition, Wholesalez suffered concrete injury, including financial losses and monetary damages.

WHEREFORE, Plaintiff, individually, demands judgment against Liquidity Services Inc., based on the foregoing, for all actual damages, consequential damages, statutory damages, prejudgment interest, post judgment interest, attorney's fees and costs, injunctive relief, and all other applicable damages and relief allowable in law and in equity, which may include punitive damages.

## COUNT V
## Fraudulent Inducement
## (Liquidity)

99.    The allegations of paragraphs 1 through 60, 63, and 74 are realleged as if fully set forth herein.

100.    Liquidity's Agent, acting on behalf of Liquidity, made material misrepresentations that personal kickback payments were required conditions to complete the transactions.

101.    These misrepresentations were intentionally designed to induce Wholesalez to divert funds outside the scope of the agreed-upon transactions.

102.    As a direct and proximate result, Wholesalez incurred damages, including the kickback and Excess Payments and consequential business losses.

103.    Additionally, Liquidity and/or its agents concealed material facts regarding the true nature and value of the goods being sold by providing Wholesalez with manifests that were knowingly inflated in retail value or included inaccurately described units in such orders, thereby fraudulently inducing Wholesalez to pay an artificially increased price.

Gavrilov & Brooks
2315 Capitol Avenue
Sacramento, CA 95816

104. Liquidity and/or its agents knew these representations were false and intended to induce Wholesalez's reliance, and Wholesalez justifiably relied on these misrepresentations, resulting in damages including the kickback and Excess Payments, overpayment for orders, and substantial business losses.

WHEREFORE, Plaintiff, individually, demands judgment against Liquidity Services Inc., based on the foregoing, for all actual damages, consequential damages, statutory damages, prejudgment interest, post judgment interest, attorney's fees and costs, injunctive relief, and all other applicable damages and relief allowable in law and in equity, which may include punitive damages.

## COUNT VI
### Negligent Hiring and Supervision
### (Liquidity)

105. The allegations of paragraphs 1 through 60, 63, and 74 are realleged as if fully set forth herein.

106. At all relevant times, Liquidity employed Liquidity's Agent as a sales agent, entrusting the agent with authority to negotiate and execute bulk product sales and interact with vendors, including Wholesalez.

107. Liquidity's Agent was unfit or incompetent for the position, as evidenced by the demand for personal kickback payments as a condition of completing company sales, and the provision of verbal-only wire instructions for payments to Hotelements Account.

108. Liquidity knew or should have known of Liquidity Agent's unfitness or incompetence.

109. Industry knowledge and widespread awareness of manifest inflation practices, as well as the foreseeable risk of fraud and bribery in high-value liquidation sales, imposed a duty on Liquidity to exercise reasonable care in hiring, training, and supervising sales.

Gavrilov & Brooks
2315 Capitol Avenue
Sacramento, CA 95816

110. Liquidity failed to implement adequate background checks, training, compliance monitoring, and supervision to prevent or detect such wrongful conduct, despite the foreseeable risk that employees in sales roles could exploit their positions for personal gain.

111. Liquidity's negligent hiring and supervision was a substantial factor in causing Wholesalez's harm.

112. As a direct and proximate result of Liquidity's negligence, Wholesalez suffered damages including the payment of kickbacks and Excess Payments, purchase of potentially overvalued or misrepresented truckloads, and millions in consequential business losses.

WHEREFORE, Plaintiff, individually, demands judgment against Liquidity Services Inc., based on the foregoing, for all actual damages, consequential damages, statutory damages, prejudgment interest, post judgment interest, attorney's fees and costs, injunctive relief, and all other applicable damages and relief allowable in law and in equity, which may include punitive damages.

## COUNT VII
**Common Count: Money Had and Received
(Hotelements)**

113. The allegations of paragraphs 1 through 60 are realleged as if fully set forth herein.

114. Hotelements received a benefit from Wholesalez in the form of wire transfers of the Excess Payments related to purchase orders placed with Liquidity.

115. Hotelements did not render any goods, services, or labor to reasonably justify the retention of such Excess Payments.

116. It would be unjust for Hotelements to retain the benefit conferred upon it by and through the wire transfers of the Excess Payments.

CLASS ACTION COMPLAINT

Gavrilov & Brooks
2315 Capitol Avenue
Sacramento, CA 95816

117. As a result, Wholesalez has suffered damages related to Hotelements procurement, receipt, and retention of the wire transferred Excess Payments.

WHEREFORE, Plaintiff, individually, demands judgment against Hotelements Inc., based on the foregoing, for all actual damages, consequential damages, statutory damages, prejudgment interest, post judgment interest, attorney's fees and costs, injunctive relief, and all other applicable damages and relief allowable in law and in equity, which may include punitive damages.

<u>**RELIEF REQUESTED**</u>

WHEREFORE, Plaintiff Auctionz, LLC d/b/a Wholesalez, individually and on behalf of others similarly situated as explained above, prays for judgment against Defendants as follows:

A.    Compensatory and consequential damages in amounts to be proven at trial;

B.    Restitution;

C.    Disgorgement of profits;

D.    Punitive damages as allowed by law;

E.    Injunctive relief prohibiting Defendants from further unlawful conduct;

F.    Attorneys' fees and costs as permitted by law;

G.    Pre- and post-judgment interest; and

H.    Such other and further relief as the Court deems just and proper.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiff Auctionz, LLC d/b/a Wholesalez, LLC hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: June 11, 2025

**GAVRILOV & BROOKS**

_____*/s/ Matthew R. Richard*_____
Matthew R. Richard
Michael S. Wilcox
Attorneys for Plaintiff


**JIMERSON BIRR, P.A.**


By: *<u>/s/ Jessica S. Mazariego</u>*
Jessica S. Mazariego*
Florida Bar No.1003893
jmazariego@jimersonfirm.com
701 Riverside Park Place
Jacksonville, FL 32204
Telephone: (904) 389-0050
Facsimile: (904) 212-1269
fileclerk@jimersonfirm.com
amandap@jimersonfirm.com
*Attorneys for Plaintiff*
*\*Motion for Pro Hac Vice Admission*
*is forthcoming*

Gavrilov & Brooks
2315 Capitol Avenue
Sacramento, CA 95816

CLASS ACTION COMPLAINT